ROBERT J. CHRISTENSEN (#11497)
P.O. Box 2942
Honolulu, Hawai`i 96802
Telephone Number: (808) 431-1160
Facsimile Number: (808) 538-7579
E-mail: rjc.esq@outlook.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| LANCE SAHER ALYAS, individually and d/b/a OAHU DISPENSARY AND PROVISIONS LLC; KYLER FALCES-CACHOLA, individually and d/b/a ELEVATED ENTERPRISES LLC,<br><br>*Plaintiffs*,<br><br>vs.<br><br>ANNE E. LOPEZ in her official capacity as Attorney General of the State of Hawaiʻi, and KENNETH S. FINK, M.D., in his official capacity as Director of the Hawaiʻi Department of Health,<br><br>*Defendants*. | CIVIL NO. [TBD]<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Lance Saher Alyas, individually and d/b/a Oahu Dispensary and Provisions, LLC, and Kyler Falces-Cachola, individually and d/b/a Elevated Enterprises, LLC, bring this action for declaratory and injunctive relief against

Defendants Anne E. Lopez, Attorney General of the State of Hawai‘i, and Dr. Kenneth S. Fink, Director of the Hawai‘i Department of Health, in their official capacities, to enjoin the enforcement of Hawai‘i statutes and administrative rules that re-criminalize federally lawful hemp products, conflict with federal law, burden interstate commerce, and authorize seizure, forfeiture, and criminal penalties without constitutionally adequate process. Plaintiffs allege as follows:

## NATURE OF THE ACTION

1. In 2023, the Hawai‘i Legislature expressly found that hemp is a high-value crop with the potential to bring significant and diverse revenues to Hawai‘i, with more than fifty thousand recognized uses, including fuel; food products such as seeds, oil, leaf juice, and herbal tinctures; and fiber used in supercapacitors, textiles, building materials, and bioplastics. (Act 263, Part I, § 1.)

2. This action challenges Hawai‘i’s enforcement of state hemp statutes and administrative rules that conflict with federal law and expose federally compliant hemp businesses to criminal penalties, seizure, and forfeiture. Plaintiffs Lance Saher Alyas and Kyler Falces-Cachola operate hemp businesses in Hawaii that distribute and sell hemp products meeting the federal definition established by Congress in the 2018 Farm Bill.

3. Despite federal legalization of hemp when it contains no more than 0.3 percent delta-9 tetrahydrocannabinol (THC) on a dry weight basis and the state of

Hawaii declaring it a high value crop, Hawaii has enacted and enforces a divergent regulatory scheme that re-criminalizes federally lawful hemp products through alternative testing methodologies and product-form restrictions not found in federal law.

4. The claims arise under federal law, including the Supremacy Clause and Interstate Commerce Clause of the United States Constitution, and seek declaratory and injunctive relief against Defendants Anne E. Lopez, Attorney General of Hawaii, and Dr. Kenneth S. Fink, Director of the Hawaii Department of Health ("DOH"), both sued in their official capacities.

5. Hawaii's hemp regulations, codified in Hawaii Revised Statutes § 328G and Hawaii Administrative Rules § 11-37, impose testing requirements and compliance standards that differ materially from the federal hemp definition. While federal law defines hemp by reference to delta-9 THC concentration, Hawai‘i's scheme mandates post-decarboxylation testing that converts tetrahydrocannabinolic acid ("THCA") into delta-9 THC, thereby creating an outcome-determinative compliance standard not contained in the federal definition of hemp. This regulatory divergence has been compounded by 2025 legislative amendments that criminalize the distribution and sale of hemp products that fail to comply with Hawai‘i's state-specific requirements, even when those products are lawful under federal law.

6. Plaintiffs assert four claims for relief. Count I alleges that Hawai‘i’s hemp regulations violate the Supremacy Clause through conflict and obstacle preemption by re-criminalizing conduct Congress expressly legalized. Count II challenges Defendant Fink’s promulgation and enforcement of administrative rules that exceed statutory authority and constitute ultra vires action. Count III alleges that Hawai‘i’s hemp regulations violate the dormant Commerce Clause by unduly burdening interstate commerce in federally lawful hemp products. Count IV asserts that the enforcement scheme violates procedural due process by authorizing seizure, forfeiture, and destruction of Plaintiffs’ property without adequate pre-deprivation process.

7. Plaintiffs seek declaratory relief establishing that certain of Hawaii's hemp regulations are preempted by federal law, violate the Commerce Clause, exceed statutory authority, and deny due process to the extent they prohibit federally compliant hemp products. Plaintiffs also seek preliminary and permanent injunctive relief prohibiting Defendants from enforcing the challenged statutes and regulations against federally compliant hemp products, including through inspection, seizure, forfeiture, or criminal enforcement without constitutionally adequate process.

## PARTIES

8. Plaintiff Lance Saher Alyas is a resident of Hawaii and owner and chief executive officer of Oahu Dispensary and Provisions LLC, a business engaged in

the distribution and sale of hemp-derived products, located at 1670 Makaloa Street, Room 204, Honolulu, Hawaii 96814.

9. Plaintiff Kyler Falces-Cachola is a resident of Hawaii and founder and managing member of Elevated Enterprises LLC, a business engaged in the distribution and sale of hemp-derived products, located at 197 West Hawaii Street, Kahului, Hawaii 96732.

10. Defendant Anne E. Lopez is the Attorney General of the State of Hawaii and maintains her principal office at the Department of the Attorney General, 425 Queen Street, Honolulu, Hawaii 96813. She is sued in her official capacity.

11. Defendant Dr. Kenneth S. Fink is the Director of the Hawaii Department of Health, in which capacity he is responsible for promulgating and enforcing Hawaiʻi Administrative Rules chapter 11-37 and administering HRS chapter 328G, located at 1250 Punchbowl Street, Honolulu, Hawaii 96813. He is sued in his official capacity.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the Constitution and laws of the United States, including the Supremacy Clause and the Commerce Clause of the United States Constitution and the Agriculture Improvement Act of 2018.

13. This Court has personal jurisdiction over Defendant Anne E. Lopez because, in her official capacity, she performs her duties and exercises enforcement authority within the State of Hawai‘i.

14. This Court has personal jurisdiction over Defendant Dr. Kenneth S. Fink because, in his official capacity, he performs his duties and exercises regulatory and enforcement authority within the State of Hawai‘i.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the acts, omissions, events, and injuries giving rise to Plaintiffs' claims occurred and continue to occur within this judicial district.

## FACTUAL ALLEGATIONS

### Federal and Early Hawaii Background

16. Cannabis sativa L. is a species of plant that encompasses both "hemp" and "marijuana," which refer to different varieties of the same plant species with distinct chemical profiles and uses.

17. On February 7, 2014, President Barack Obama signed into law the Agricultural Act of 2014, Pub. L. No. 113-79 (the "2014 Farm Bill"), which permitted states to grow "industrial hemp" under certain conditions, namely, if it was grown "for purposes of research conducted under an agricultural pilot program or other agricultural or academic research" and those activities were allowed under the relevant state's laws. 7 U.S.C. § 5940(a). "Industrial hemp" was defined in the 2014

Farm Bill as the plant Cannabis sativa L., or any part of such plant, "with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 5940(b). The 2014 Farm Bill did not remove industrial hemp from the federal controlled substances schedules and did not decriminalize hemp outside the scope of authorized pilot programs.

18. In 2014, the Hawaii legislature enacted Act 177, Session Laws of Hawaii 2014, establishing Hawaii's first statutory framework governing hemp cultivation under an industrial hemp pilot program administered by the Department of Agriculture.

19. Act 177 defined "industrial hemp" as "the plant Cannabis sativa L. and any part of that plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 per cent on a dry weight basis or a tetrahydrocannabinol concentration allowed by federal law, whichever is greater, that is cultivated" and which did not incorporate post-decarboxylation testing or aggregate cannabinoid calculations.

20. This 2014 definition adopted a delta-9 THC-only threshold, did not incorporate post-decarboxylation or carboxylic testing concepts, and did not distinguish hemp based on product form or method of consumption.

21. In 2018, Congress enacted the Agriculture Improvement Act of 2018 (‘2018 Farm Bill’), which, for the first time, removed hemp from the federal

Controlled Substances Act and defined "hemp" as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."[1]

22. The federal definition relies exclusively on delta-9 THC concentration, expressly includes all parts of the plant and its derivatives, and does not condition hemp legality on testing methodology, post-decarboxylation calculations, or "total tetrahydrocannabinol concentration" concepts.

**Act 14 and Structural Deviation**

23. In 2020, the Hawaiʻi Legislature enacted Act 14, Session Laws of Hawaiʻi 2020, which formally repealed HRS § 141-31, the statute governing the State's industrial hemp pilot program. Act 14 did not eliminate hemp regulation in Hawaiʻi; rather, it restructured and bifurcated the State's regulatory framework in response to federal legalization of hemp. Following Act 14, regulatory authority over cultivated hemp production was reorganized and later codified within HRS § 141,

[1] On November 12, 2025, President Trump, signed into law the Government funding bill (H.R.5371 - Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026 "the Act".) The change to the Act will be effective approximately **365 days from November 12, 2025**. Section 781 of Act contains an amendment to 7 USCS § 1639o, specifically, amending Section 297A of the 2018 Farm Bill which contained the former definition of Industrial Hemp, to a new definition. The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a total tetrahydrocannabinols concentration (including tetrahydrocannabinolic acid) of not more than 0.3 percent on a dry weight basis. This means the definition of Hemp as defined under the 2018 Farm Bill is still the operative definition of Hemp at all times referenced herein.

including HRS §§ 141-41 and 141-42, while regulation of manufactured hemp and hemp-derived products was placed under HRS § 328G, administered by the DOH.

24. Act 14 also modified the definition of Hemp to: "'Hemp' means Cannabis sativa L. and any part of that plant, whether growing or not, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, with a delta-9- tetrahydrocannabinol concentration of not more than 0.3 per cent on a dry weight basis, *as measured post-decarboxylation or by other similarly reliable methods*." (Act 14 at Section 4 (1), SLH 2020.) [Emphasis added.] By adding the phrase "*as measured post-decarboxylation or by other similarly reliable methods,"* Act 14 introduced testing methodology into the statutory definition of hemp for the first time under Hawai‘i law.

25. By incorporating post-decarboxylation and "other similarly reliable" testing concepts into the statutory definition of hemp, Act 14 marked Hawai‘i's first express statutory deviation from the federal definition of Hemp by conditioning compliance on testing methodology.

26. Separately, Act 14, Session Laws of Hawai‘i 2020, approved on July 1, 2020, amended the Hawai‘i Revised Statutes by enacting new statutory provisions governing hemp processors and hemp products, administered by the Department of Health. Although Act 14 did not assign a chapter number within the Act itself, those provisions were subsequently codified as HRS chapter 328G. In contrast to

Hawaiʻi's cultivation regime under HRS chapter 141—which expressly incorporates the federal definition of hemp set forth in 7 U.S.C. § 1639o(1) through HRS § 141-41(a)—chapter 328G conditioned hemp legality on testing methodology, including measurement "post-decarboxylation or by other similarly reliable methods."

27. Upon its enactment in 2020, the definition introduced by Act 14 became operative, and HRS § 328G-1 introduced, for the first time in Hawaiʻi law governing hemp products, a statutory definition that departs from the federal definition by conditioning compliance on testing methodology rather than solely on delta-9 THC concentration.

28. Hawaiʻi's present definition of hemp under HRS § 328G-1 provides: "'Hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 per cent on a dry weight basis, as measured post-decarboxylation or by other similarly reliable methods."

29. The italicized language—"as measured post-decarboxylation or by other similarly reliable methods"—does not appear in the definition of industrial hemp in the 2018 Farm Bill or Act 177 (2014).

30. Act 14 did not define "total tetrahydrocannabinol concentration," did not reference tetrahydrocannabinolic acid ("THCA"), and did not supply any

conversion formula, leaving the scope of the deviation undefined and subject to subsequent administrative interpretation.

**Administrative Expansion and Criminalization**

31. Pursuant to the rulemaking authority delegated by the Legislature in HRS § 328G-4(a), the Department of Health ("DOH") promulgated Hawai'i Administrative Rules ("HAR") chapter 11-37 beginning in 2021 to implement the statutory hemp framework set forth in HRS chapter 328G. Those rules establish compliance standards that are enforced through a statutory scheme consisting of a prerequisite registration under HRS § 328G-9, a criminal offense provision under HRS § 328G-10, and inspection, seizure, and forfeiture authorities under HRS §§ 328G-11 and 328G-12, which operate in conjunction with one another.

32. HAR § 11-37-2 defines "decarboxylated" as the completion of the chemical reaction that converts naturally occurring cannabinoid acid into a cannabinoid, including the conversion of delta-9-tetrahydrocannabinolic acid ("THCA") into delta-9-tetrahydrocannabinol ("Δ9-THC"), and provides that the decarboxylated value for delta-9-THC may be calculated using a conversion formula that adds Δ9-THC and eighty-seven and seven-tenths percent (87.7%) of THCA. (HAR § 11-37-2 (definition of "Decarboxylated")).

33. The Department of Health applies this THCA-to-THC conversion methodology, through the testing requirements set forth in HAR §§ 11-37-21

through 11-37-26, to enforce the prohibition on the sale or distribution of manufactured hemp products exceeding 0.3 percent "total tetrahydrocannabinol concentration" under HAR § 11-37-3(d), thereby transforming a limited statutory reference to testing protocols into an outcome-determinative legal classification standard that governs whether a hemp product is treated as lawful and whether regulated persons and/or entities are exposed to criminal, seizure, and forfeiture consequences under HRS §§ 328G-10 through 328G-12, following the registration requirement imposed by HRS § 328G-9.

34. Although HRS § 328G-4(a)(1)–(3) authorizes the Department of Health to adopt rules governing inspection, sampling, testing protocols, and maximum allowable concentrations of cannabinoids, the statute does not expressly authorize the Department to redefine hemp legality by aggregating cannabinoids, converting tetrahydrocannabinolic acid into delta-9-THC for purposes of legal classification, or adopting a "total tetrahydrocannabinol concentration" standard that departs from the federal definition of hemp incorporated into Hawaiʻi law through HRS § 141-41(a), yet enforced against distributors and retailers through criminal and forfeiture provisions codified at HRS §§ 328G-10 through 328G-12.

35. Through legislative amendments enacted in 2025 and now codified within HRS chapter 328G, the previously administrative standards adopted under HAR chapter 11-37 became enforceable through a statutory escalation mechanism

consisting of mandatory registration under HRS § 328G-9, criminal liability under HRS § 328G-10, and inspection, seizure, and forfeiture authority under HRS §§ 328G-11 and 328G-12, notwithstanding that those standards depart from the federal hemp framework and Hawai‘i’s original statutory hemp scheme.

36. In 2025, the Hawai‘i Legislature enacted legislation codified at HRS §§ 328G-9 through 328G-12, marking a shift from civil and administrative regulation of hemp products to criminal enforcement predicated on regulatory non-compliance.

37. HRS § 328G-9 established a statewide registration requirement for hemp product distributors and retailers, which operates as a prerequisite to lawful participation in the regulated market and as a predicate for criminal liability under HRS § 328G-10.

38. HRS § 328G-10 makes the sale or distribution of hemp products subject to misdemeanor or felony prosecution when conducted in violation of chapter 328G or rules adopted thereunder, as a result of which HRS §§ 328G-11 and 328G-12 authorize inspection, seizure, confiscation, forfeiture, and destruction of hemp products alleged to be non-compliant. These enforcement powers apply to distributors and retailers and are triggered by alleged non-compliance with Hawai‘i’s state-specific definition and regulatory requirements.

39. These 2025 enactments did not restore Hawaii’s delta-9 THC–only standard and did not realign state law with the federal definition of hemp. Instead,

the Legislature imposed criminal penalties and forfeiture consequences on regulated parties for failing to comply with an already-divergent statutory and regulatory scheme.

40. From 2014 through the enactment of Act 14 in 2020, Hawaii law defined hemp consistently with federal law, using a delta-9 THC–only standard.

41. Following the enactment of Act 14 in 2020, Hawaii departed from the federal definition by conditioning hemp legality on testing methodology, a deviation later expanded through administrative rulemaking.

42. In 2025, the Legislature escalated that departure by criminalizing regulatory non-compliance and authorizing inspection, seizure, and forfeiture, without any corresponding change to federal law.

43. As a result, Hawaii now enforces a statutory and regulatory scheme that criminalizes conduct Congress expressly legalized, frustrates the purposes of the 2018 Farm Bill, and exposes federally compliant hemp businesses to arrest, prosecution, and forfeiture.

44. As amended by Act 269 (2025), HRS § 328G authorizes Defendants to impose severe enforcement measures against hemp distributors and retailers, including seizure, forfeiture, and criminal penalties.

45. HRS § 328G-10(b) creates the offense of unlawful hemp distribution or retailing, punishable as a misdemeanor or, for subsequent violations within five (5)

years, as a felony, based on alleged violations of chapter 328G and rules adopted thereunder.

46. HRS § 328G-11 authorizes the Department of Health and the Attorney General to inspect the premises, operations, and records of any entity engaged in the distribution or sale of hemp products for purposes of enforcing chapter 328G and rules adopted thereunder.

47. HRS § 328G-12 authorizes the seizure and confiscation of hemp products allegedly possessed, sold, or offered for sale in violation of chapter 328G and subjects those products to forfeiture and destruction. The statute further relieves the seizing entity of responsibility "for the care and maintenance of the products," permitting destruction before any final determination of compliance is made.

**Plaintiff Harm and Standing**

48. Plaintiffs operate hemp businesses in Hawaii that distribute and sell hemp products that comply with the federal definition of hemp but may not comply with Hawaii's divergent definition and testing requirements.

49. Plaintiffs face a credible and imminent threat of enforcement actions, including inspection, embargo, seizure, forfeiture, destruction of inventory, and criminal prosecution under Hawaiʻi's hemp regulatory scheme. Because HRS §§ 328G-9 through 328G-12 expressly regulate and impose enforcement consequences on hemp product distributors and retailers, Plaintiffs are now the primary subjects of

inspection, enforcement, seizure, forfeiture, and criminal prosecution under Hawai'i law.

50. The enforcement regime permits these actions without prior notice or a meaningful opportunity to be heard before deprivation occurs, creating substantial risk of erroneous deprivation due to disputed testing methodologies and complex chemical measurements.

51. The products Plaintiffs distribute are hemp-derived products that comply with the federal definition of hemp under the 2018 Farm Bill, containing no more than 0.3% delta-9 THC on a dry-weight basis.

52. These products are manufactured by licensed producers that follow standard industry compliance practices and are accompanied by third-party laboratory testing intended to confirm cannabinoid content and federal compliance.

53. Plaintiffs require manufacturers to provide valid certificates of analysis for each product batch, documentation confirming compliance with federal hemp standards, and clear labeling and batch traceability.

54. In response to Hawaii's enforcement posture, Plaintiffs have been compelled to alter inventory planning, shipment timing, and business development decisions—not because their products are unlawful under federal law, but because continued distribution of federally compliant hemp products now carries the risk of inspection, seizure, forfeiture, and criminal prosecution under Hawaii law.

55. Plaintiffs maintain ongoing wholesale relationships with retailers that are threatened by Hawai‘i’s enforcement posture and the risk that retailers will be unable or unwilling to continue ordering hemp and hemp-derived products that comply with the federal definition of hemp but may be treated as unlawful under Hawai‘i law.

56. If retailers cannot legally sell the products, inventory becomes unsellable in the Hawai‘i market, packaging and branding investments are lost, and distribution relationships are irreparably damaged.

57. Treating federally lawful hemp as illegal in Hawai‘i causes reputational harm and further interferes with interstate commerce by undermining confidence in lawful supply chains and making long-term partnerships harder to establish and maintain.

58. Plaintiffs face substantial monetary and reputational losses which will continue unless the subject statutes are enjoined.

59. In addition to direct financial loss, the seizure, embargo, or destruction of inventory causes reputational harm by falsely implying noncompliance or illegitimacy and damaging trust with retailers, partners, and future business prospects.

60. Criminal enforcement against Plaintiffs would eliminate distribution partners, destroy established relationships, cut off income streams, and prevent long-term business growth, even if Plaintiffs are not personally prosecuted.

61. HRS §§ 328G-9 through 328G-12, in conjunction with HAR chapter 11-37, create the threat of extinction for Plaintiffs' businesses without an adequate alternative. If Plaintiffs' businesses cannot sell federally compliant hemp-derived products because doing so could result in both civil and criminal penalties, they face a substantial risk of being forced to shut down. This injury cannot be remedied through monetary damages because seizure, forfeiture, loss of goodwill, and criminal enforcement irreversibly destroy business relationships and market access.

## CLAIMS FOR RELIEF

## COUNT I

### (Declaratory Judgment – Violation of the Supremacy Clause – Conflict and Obstacle Preemption against all defendants)

62. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 61 as if fully set forth herein.

63. The Supremacy Clause of the United States Constitution provides that federal law "shall be the supreme Law of the Land."

64. State laws that conflict with federal law are without effect and are preempted.

65. As established in *Gonzales v. Raich*, 545 U.S. 1 (2005), the Supreme Court held that, under the Commerce Clause, Congress possesses broad authority to regulate, prohibit, or permit the intrastate manufacture and possession of controlled substances as part of a comprehensive federal regulatory scheme, notwithstanding contrary state law.

66. Conversely, the Commerce Clause grants Congress the authority to legalize hemp as an article of interstate commerce and to preempt state laws that criminalize or obstruct the commercial flow of federally lawful hemp.

67. The 2018 Farm Bill fundamentally redefined hemp as an agricultural commodity, establishing a uniform federal standard: Industrial hemp is "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." Congress also protected interstate hemp commerce by prohibiting states from interfering with the interstate transportation or shipment of hemp or hemp products produced in accordance with federal law. See 7 U.S.C. § 1639p(d) ("No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 through the State or the territory of the Indian Tribe, as applicable.").

68. In the 2018 Farm Bill, Congress removed hemp from the federal Controlled Substances Act and eliminated federal criminal penalties for the manufacture, distribution, possession, and sale of hemp and hemp-derived products that meet the statutory definition.

69. Congress defined hemp solely by reference to its delta-9 tetrahydrocannabinol concentration, establishing a uniform federal threshold of not more than 0.3 percent delta-9 THC on a dry-weight basis.

70. Hawai‘i's statutory and regulatory scheme, as implemented through HAR chapter 11-37 and enforced through HRS §§ 328G-9 through 328G-12, substitutes post-decarboxylation and “total tetrahydrocannabinol concentration” testing methodologies for Congress's delta-9-only definition of hemp.

72. Hawai‘i’s scheme prohibits, penalizes, and criminalizes the distribution and retail sale of hemp products by distributors and retailers that are lawful under federal law.

73. This conflict is not a matter of increased regulatory stringency or enhanced consumer protection, but a direct classification conflict in which state law re-criminalizes conduct that Congress affirmatively removed from federal criminal control and that Hawai‘i itself adopted through Act 14. Act 14 incorporated Congress’s delta-9 tetrahydrocannabinol threshold as the core boundary between lawful hemp and controlled marijuana but also introduced testing methodology into

the definition through the phrase ‘as measured post-decarboxylation or by other similarly reliable methods. Defendants’ enforcement regime departs further by substituting an alternative chemical classification that treats federally lawful hemp as illegal, thereby converting a regulatory testing methodology into an outcome-determinative criminal standard and nullifying Congress’s—and Hawai‘i’s—chosen line of demarcation.

74. Defendants' enforcement of HAR chapter 11-37 in conjunction with HRS §§ 328G-9 through 328G-12 stands as an obstacle to Congress's objectives in legalizing hemp and is therefore preempted by federal law. By conditioning hemp legality on testing methodologies and chemical conversions rejected by Congress, Hawai‘i’s enforcement scheme frustrates Congress’s objectives of establishing a uniform national hemp market, protecting interstate commerce, and removing hemp from criminal control. Allowing individual states to substitute alternative chemical classifications for hemp legality would reintroduce the very patchwork of criminal enforcement that Congress sought to eliminate in the 2018 Farm Bill.

75. As a result, Plaintiffs’ businesses face the threat of extinction without an adequate alternative because continued distribution of federally lawful hemp products triggers criminal and forfeiture exposure under Hawai‘i law.

76. Pursuant to *Ex parte Young*, 209 U.S. 123 (1908), this Court may grant preliminary and permanent injunctive relief prohibiting Defendants from enforcing

HAR chapter 11-37 and HRS §§ 328G-9 through 328G-12 to the extent those provisions redefine or treat as unlawful hemp and hemp-derived products that are lawful under federal law—i.e., products that meet the definition of "hemp" set forth in 7 U.S.C. § 1639o(1)—by conditioning legality on post-decarboxylation and related "total tetrahydrocannabinol concentration" methodologies that conflict with Congress's chosen delta-9 THC standard and thereby criminalize or penalize the sale, possession, or distribution of federally lawful hemp products.

**COUNT II**

**(Ultra Vires Administrative Action and Unlawful Rulemaking against defendant Kenneth S. Fink)**

77. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 76 as if fully set forth herein.

78. Under Hawaii law, an administrative agency may act only within the authority delegated to it by the Legislature.

79. Agency rules that exceed statutory authority, alter statutory meaning, or impose substantive requirements not authorized by statute are ultra vires, unlawful, and void.

80. Hawaii Revised Statutes chapter 328G authorizes the Department of Health, pursuant to HRS § 328G-4(a), to adopt rules governing inspection, sampling, and procedural testing protocols for purposes of determining compliance with statutory cannabinoid concentration limits but does not authorize the Department to

redefine hemp legality or to impose substantive criteria not enacted by the Legislature.

81. In 2014, the Hawai‘i Legislature defined industrial hemp, for purposes of cultivation, as “Cannabis sativa L. with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry-weight basis or a tetrahydrocannabinol concentration allowed by federal law, whichever is greater, that is cultivated,” demonstrating the Legislature’s consistent use of a delta-9 THC–only threshold absent express authorization to aggregate or convert cannabinoids.

82. The statute did not define “total tetrahydrocannabinol concentration,” did not establish a THCA threshold, and did not prescribe any numerical conversion formula for determining legality.

83. Through Hawaii Administrative Rules chapter 11-37, Defendant Fink has promulgated and enforced rules that exceed this delegated authority by transforming testing methodology into a substantive redefinition of hemp. Accordingly, HAR chapter 11-37 exceeds the authority delegated by the Legislature and those rules are void and without legal effect under Hawai‘i law.

84. Pursuant to HAR § 11-37-2, the DOH defines “decarboxylated” to include the chemical conversion of tetrahydrocannabinolic acid (“THCA”) into delta-9 tetrahydrocannabinol (“Δ9-THC”) and provides that the decarboxylated

value may be calculated using a conversion formula that adds Δ9-THC and eighty-seven and seven-tenths percent (87.7%) of THCA.

85. This specific numerical THCA-to-THC conversion formula does not appear in the text of HRS chapter 328G, including the enforcement and criminal provisions codified at HRS §§ 328G-9 through 328G-12, and instead appears solely in administrative rules adopted by the Department of Health pursuant to HAR § 11-37-2.

86. Through HAR § 11-37-8, the Department of Health adopted categorical prohibitions on entire classes of manufactured hemp products, including inhalable and smokable hemp products, without regard to whether those products comply with the federally compliant delta-9-tetrahydrocannabinol ("Δ9-THC") concentration threshold incorporated into Hawaiʻi law through HRS § 141-41(a). These prohibitions are enforced through the criminal and forfeiture provisions codified at HRS §§ 328G-10 through 328G-12.

87. Separately, HAR § 11-37-22, adopted as part of HAR chapter 11-37, subchapter 2, requires manufactured hemp products to undergo laboratory testing for delta-9-tetrahydrocannabinol ("Δ9-THC"), delta-8-tetrahydrocannabinol ("Δ8-THC"), tetrahydrocannabinolic acid ("THCA"), and total THC, and applies these testing requirements independently of product format or route of administration,

with non-compliance triggering enforcement under HRS §§ 328G-10 through 328G-12.

88. Taken together, these rules do not merely implement the Legislature's authorization for inspection, testing, and cannabinoid concentration limits under HRS § 328G-4(a), but instead supply substantive criteria not enacted by the Legislature, including a numerical THCA-to-THC conversion formula, outcome-determinative testing methodologies, and per se product-form prohibitions, which are enforced against distributors and retailers through the registration prerequisite of HRS § 328G-9 and the criminal, inspection, and forfeiture provisions codified at HRS §§ 328G-10 through 328G-12, thereby redefining hemp legality in a manner not clearly authorized by statute.

89. Defendant Fink's ongoing and threatened enforcement of HAR chapter 11-37 against Plaintiffs' hemp products exceeds the authority delegated by the Legislature in HRS chapter 328G and is unlawful.

90. Absent injunctive relief, Defendant Fink will continue to enforce these ultra vires rules to classify federally lawful hemp as illegal, subjecting Plaintiffs to inspection, seizure, forfeiture, and criminal exposure not authorized by statute.

**COUNT III**

**(42 U.S.C. § 1983 Dormant Commerce Clause against all defendants)**

91. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 90 as if fully set forth herein.

92. The Commerce Clause of the United States Constitution prohibits states from enacting or enforcing laws that discriminate against or unduly burden interstate commerce.

93. Plaintiffs are engaged in the lawful distribution and retail sale of hemp products that move predominantly in interstate commerce because Hawai‘i does not permit in-state commercial hemp production for the products Plaintiffs sell, including products sourced from manufacturers and distributors located outside the State of Hawaii.

94. Hawai‘i's hemp regulations impose unique and non-uniform requirements governing the legality, testing, and permissible forms of hemp products that differ materially from those applied in other states. Although Hawai‘i's requirements apply to all hemp products in form, they operate in practical effect to exclude or substantially burden interstate commerce by conditioning market access on Hawai‘i-specific testing methodologies, chemical conversion formulas, and product-form prohibitions adopted under HAR chapter 11-37 and enforced through HRS §§ 328G-9 through 328G-12, which differ materially from those imposed in other states.

95. These Hawai‘i-specific requirements disproportionately burden out-of-state hemp products by subjecting them to testing methodologies, categorical product prohibitions, and enforcement consequences that are not required in, and differ materially from, the products’ states of origin, where those products may be lawfully manufactured and sold without comparable restrictions.

96. Defendants’ enforcement regime has the practical effect of forcing Plaintiffs to either cease interstate commerce in federally lawful hemp products or incur the risk of inspection, seizure, forfeiture, destruction, and criminal prosecution under HRS §§ 328G-10 through 328G-12 upon entry into Hawai‘i.

97. Any asserted local benefits of Defendants’ enforcement scheme are speculative or marginal, and the same interests can be achieved through reasonable, nondiscriminatory alternatives that impose a lesser burden on interstate commerce, including uniform enforcement of the federal delta-9 THC standard adopted by Congress.

98. The burdens imposed on interstate commerce by Defendants’ enforcement of Hawai‘i’s hemp regulations are clearly excessive in relation to any legitimate local interests, particularly where those interests are already addressed by federal law.

99. Violations of the Dormant Commerce Clause constitute a claim under 42 U.S.C. § 1983. See *Dennis v. Higgins*, 498 U.S. 439, 451 (1991).

100. Pursuant to *Ex parte Young*, 209 U.S. 123 (1908), this Court may grant preliminary and permanent injunctive relief prohibiting Defendants from enforcing HAR chapter 11-37 through the registration, criminal, inspection, seizure, and forfeiture mechanisms codified at HRS §§ 328G-9 through 328G-12, to the extent those provisions regulate or restrict the interstate sale and distribution of federally lawful hemp products by imposing Hawaiʻi-specific chemical classifications and enforcement regimes that impermissibly burden and regulate interstate commerce in violation of the Dormant Commerce Clause.

**COUNT IV**

**(Violation of Due Process against all defendants)**

101. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 100 as if fully set forth herein.

102. The Due Process Clause of the Fourteenth Amendment prohibits the State from depriving any person of property without due process of law.

103. Where the State authorizes seizure, embargo, forfeiture, destruction of property, or criminal penalties, due process generally requires notice and a meaningful opportunity to be heard before the deprivation occurs.

104. Plaintiffs possess constitutionally protected property interests in their lawfully acquired hemp products, inventory, business operations, contracts, and

goodwill, as well as liberty interests in pursuing their lawful occupations free from arbitrary governmental interference.

105. As codified at HRS §§ 328G-9 through 328G-12, Hawaiʻi law authorizes Defendants to impose severe enforcement measures against hemp distributors and retailers, including inspection, seizure, forfeiture, destruction of inventory, and criminal penalties.

106. HRS § 328G-10(b) creates the offense of unlawful hemp distribution or retailing, punishable as a misdemeanor or, for subsequent violations within five (5) years, as a felony, based on alleged violations of chapter 328G and rules adopted thereunder.

107. HRS § 328G-11 authorizes the Department of Health and the Attorney General to inspect the premises, operations, and records of any entity engaged in the distribution or sale of hemp products.

108. HRS § 328G-12 authorizes the seizure and confiscation of hemp products allegedly possessed, sold, or offered for sale in violation of chapter 328G and subjects those products to forfeiture and destruction. The statute also removes liability for the seizing entity "for the care and maintenance of the products." As a result, seized products may be destroyed before any neutral determination is made as to whether they violate chapter 328G.

109. As enforced by Defendants, this statutory and regulatory scheme authorizes warrantless inspections, embargo, seizure, forfeiture, and destruction of hemp products without prior notice or a meaningful opportunity for Plaintiffs to be heard before the deprivation occurs. These inspection and seizure powers operate as the functional predicate for criminal enforcement under HRS § 328G-10, following the mandatory registration requirement imposed by HRS § 328G-9, yet are exercised without the procedural safeguards that ordinarily precede the deprivation of protected property or liberty interests under the Due Process Clause.

110. Any opportunity to contest enforcement actions occurs, if at all, only after Plaintiffs' inventory has been embargoed, seized, destroyed, or removed from commerce, and after Plaintiffs have already suffered irreversible economic harm.

111. The statutory scheme does not require a prompt pre-deprivation hearing before a neutral decisionmaker, does not provide clear timelines for post-seizure review sufficient to prevent irreparable harm, and does not ensure preservation of seized property pending adjudication. Post-deprivation remedies are constitutionally inadequate where, as here, seizure, forfeiture, and destruction occur before any neutral adjudication and where the property at issue cannot be meaningfully restored after the fact, thereby inflicting irreversible economic and occupational harm.

112. The risk of erroneous deprivation is substantial and unacceptably high because enforcement determinations depend on disputed testing methodologies,

complex chemical measurements, agency-created conversion formulas, evolving and unpublished enforcement interpretations, and product-form prohibitions not clearly anchored in statute.

113. Defendants lack any exigent interest that justifies immediate seizure or destruction of Plaintiffs' hemp products without prior process, particularly where the products are lawful under federal law, are not contraband *per se*, and present no demonstrated imminent threat to public health.

114. Defendants' enforcement of HRS §§ 328G-9 through 328G-12, in conjunction with HAR chapter 11-37, without adequate pre-deprivation process violates the Due Process Clause of the Fourteenth Amendment.

115. Pursuant to *Ex parte Young*, 209 U.S. 123 (1908), this Court may grant preliminary and permanent injunctive relief prohibiting Defendants from enforcing HAR chapter 11-37 through the registration, criminal, inspection, seizure, forfeiture, and destruction mechanisms codified at HRS §§ 328G-9 through 328G-12. Such relief is warranted to the extent those provisions authorize inspection, embargo, seizure, forfeiture, destruction of hemp products, or initiation of criminal enforcement without prior notice and a meaningful opportunity to be heard, or without constitutionally adequate procedures sufficient to prevent erroneous and irreparable deprivation of Plaintiffs’ property and liberty interests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

A. A declaration that Defendants' enforcement of Hawai‘i Administrative Rules chapter 11-37 in conjunction with Hawai‘i Revised Statutes §§ 328G-9 through 328G-12, as applied to Plaintiffs, is preempted by federal law in violation of the Supremacy Clause of the United States Constitution;

B. A declaration that Hawai‘i Administrative Rules chapter 11-37, including but not limited to HAR §§ 11-37-2 and 11-37-22, were promulgated in excess of statutory authority, constitute ultra vires administrative action, and are void and without legal effect under Hawai‘i law;

C. A declaration that Defendants' enforcement of Hawai‘i's hemp regulatory scheme, including HAR chapter 11-37 as enforced through HRS §§ 328G-9 through 328G-12, violates the Dormant Commerce Clause of the United States Constitution;

D. A declaration that Defendants' enforcement of HAR chapter 11-37 through the inspection, seizure, forfeiture, and criminal enforcement mechanisms codified at HRS §§ 328G-9 through 328G-12 violates Plaintiffs' rights to procedural due process under the Fourteenth Amendment to the United States Constitution;

E. Preliminary and permanent injunctive relief enjoining Defendants, their officers, agents, employees, and all persons acting in concert with them from enforcing Hawaiʻi Administrative Rules chapter 11-37 through HRS §§ 328G-9 through 328G-12, to the extent such enforcement conflicts with federal law or the United States Constitution as alleged herein, including by (i) redefining or treating as unlawful hemp and hemp-derived products that are lawful under federal law, (ii) imposing ultra vires testing methodologies, conversion formulas, or product-form prohibitions not authorized by statute, (iii) unduly burdening interstate commerce, or (iv) depriving Plaintiffs of property or liberty interests without prior notice and a meaningful opportunity to be heard or other constitutionally adequate process;

F. An award of Plaintiffs' reasonable attorneys' fees, including taxable costs, and expenses pursuant to 42 U.S.C. § 1988, and any other applicable provision of law;

G. Such other and further relief as the Court deems just and proper.

DATED: Honolulu, Hawai`i, January 28, 2026.

/s/ Robert J. Christensen
ROBERT J. CHRISTENSEN, ESQ.
Attorney for Plaintiffs