IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LANCE SAHER ALYAS, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>ANNE E. LOPEZ, et al.,<br><br>Defendants. | CIV. NO. 26-00035 JAO-WRP<br><br>ORDER (1) DENYING MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 37) AND (2) GRANTING MOTION TO DISMISS (ECF NO. 43) |

**ORDER (1) DENYING MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 37) AND (2) GRANTING MOTION TO DISMISS (ECF NO. 43)**

This case presents a challenge to Hawaiʻi laws that affect the sale and distribution of hemp products. Plaintiffs Lance Saher Alyas ("Alyas"), individually and doing business as Oahu Dispensary and Provisions, LLC ("ODP"), and Kyler Falces-Cachola ("Falces-Cachola"), individually and doing business as Elevated Enterprises, LLC ("Elevated Enterprises") (collectively, "Plaintiffs"), bring this lawsuit against Defendants Anne E. Lopez, Attorney General of the State of Hawaiʻi, and Dr. Kenneth S. Fink, Director of the Hawaii Department of Health ("Dr. Fink") (collectively, "Defendants"). Plaintiffs allege that Hawaii's hemp regulations, codified in Hawaiʻi Revised Statutes ("HRS") § 328G and Hawaiʻi Administrative Rules ("HAR") § 11-37, impose testing

requirements and compliance standards that violate the United States Constitution and exceed administrative rulemaking authority.

Before the Court are Plaintiffs' Motion for Preliminary Injunction ("PI Motion"), ECF No. 37, and Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion to Dismiss" or "MTD"), ECF No. 43. For the following reasons, the Court GRANTS Defendants' Motion to Dismiss without leave to amend, and DENIES AS MOOT Plaintiffs' Motion for Preliminary Injunction.

## I. BACKGROUND

### A. Facts[1]

#### 1. Statutory Scheme

Cannabis sativa L. is a species of plant that includes both hemp and marijuana, which have distinct chemical profiles and uses. *See* ECF No. 34 ¶ 17. The Agricultural Act of 2014, Pub. L. No. 113-79, permitted states to grow industrial hemp under certain conditions, such as for agricultural or academic research. *See id.* ¶ 18 (citing 7 U.S.C. § 5940(a)). "Industrial hemp" was defined as the plant Cannabis sativa L., or any part of such plant, "with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight

[1] Unless otherwise indicated, the information in this section is alleged in the First Amended Complaint ("FAC").

basis." *Id.* (citing 7 U.S.C. § 5940(b)). That same year, Hawaii's legislature enacted Act 177, Session Laws of Hawaii 2014, which established the state's first statutory framework governing industrial hemp. *See id.* ¶ 19. Its definition of industrial hemp matched the federal law. *See id.*

In 2018, Congress enacted the Agriculture Improvement Act of 2018 ("2018 Farm Bill"), which is the governing federal law regarding hemp. *See id.* ¶ 22. The 2018 Farm Bill removed hemp from the Controlled Substances Act and defined "hemp" as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." *Id.*

As a response to the 2018 Farm Bill, Hawaii's legislature enacted Act 14, Session Laws of Hawaiʻi 2020, which repealed the state's industrial hemp pilot program. *See id.* ¶ 24. It adopted the federal law's definition for hemp, except it added that the delta-9-tetrahydrocannabinol concentration levels would be "measured post-decarboxylation or by other similarly reliable methods." *Id.* ¶ 25 (citing Act 14 at Section 4 (1), SLH 2020). The current statutory scheme

essentially adopts the same definition.[2] *See id.* ¶ 31 (citing HRS § 328G-1). The statutory scheme further delegated rulemaking authority to Hawaii's Department of Health ("DOH"). *See id.* ¶ 32. As a result, DOH promulgated HAR chapter 11-37 to establish compliance standards and enforcement procedures, which consisted of registration requirements, criminal penalties, and inspection, seizure, and forfeiture authorities. *See id.* These standards employ a conversion methodology of delta-9-tetrahydrocannabinolic acid ("THCA") into delta-9-tetrahydrocannabinol ("delta-9 THC") to calculate the total tetrahydrocannabinol ("THC") levels for compliance purposes. *Id.* ¶¶ 33–35. According to Plaintiffs, this method expands the scope of prohibited conduct beyond the federal definition of hemp. *See id.* ¶ 35.

Then in 2025, the Hawaiʻi legislature passed House Bill 1482, also known as Act 269. *See* 2025 Hawaii Laws Act 269 (H.B. 1482). Plaintiffs allege that these amendments "became enforceable through a statutory escalation mechanism consisting of mandatory registration under HRS § 328G-9, criminal liability under HRS § 328G-10, and inspection, seizure, and forfeiture authority under HRS §§ 328G-11 and 328G-12, notwithstanding that those standards depart from the federal hemp framework and Hawaiʻi's original statutory hemp scheme." *See* ECF

[2] The FAC's representation of the definition under HRS § 328G-1 is inaccurate because it omits the phrase, "*whether growing or not*." However, the omitted phrase is not relevant to this Order's discussion.

No. 34 ¶ 36. They also allege that DOH adopted categorical prohibitions on entire classes of manufactured hemp products, including inhalable and smokable products, without regard to whether they are federally compliant. *See id.* ¶ 92.

On November 12, 2025, the federal Government funding bill was signed into law to take effect in November 2026. *See* H.R. 5371. Section 781 of the bill contains an amendment to 7 U.S.C. § 1639o, which changes the former definition of industrial hemp to mean "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a total [THC] concentration (including [THCA]) of not more than 0.3 percent on a dry weight basis." ECF No. 34 ¶ 22 n.1. This amendment is notable because its effect is consistent with Hawaii's current regulatory framework. *See* ECF No. 55 at 11 n.1.

**2. Alleged Harms Against Plaintiffs**

Plaintiffs each operate hemp businesses in Hawai‘i that distribute and sell hemp products. *See* ECF No. 34 ¶ 49. Alyas owns and is the chief executive officer of ODP. *See id.* ¶ 8. The FAC alleges that "Plaintiffs operate hemp businesses in Hawai‘i that distribute and sell hemp products that comply with the federal definition of hemp but may not comply with Hawai‘i's divergent definition and testing requirements." *Id.* ¶ 49. Plaintiffs further allege that, as a result, they "face credible and imminent threat of enforcement actions, including inspection,

embargo, seizure, forfeiture, destruction of inventory, and criminal inspection," and that Hawaii's hemp regime robs them of due process. *Id*. ¶ 50. In his declaration in support of his PI Motion, Alyas reports that ODP has been operating for approximately two and a half years in Hawai‘i and has been selling hemp products in its four retail locations throughout the state. *See* ECF No. 37 at 29. Alyas further states that the products ODP sells comply with the federal definition of hemp, which is based on representations from his suppliers and certificates of analysis provided by independent laboratories. *See id.* According to his declaration, because of the state law's testing methodology for total THC, ODP's products may be treated as non-compliant, even if the product contains no more than the federal allowance for delta-9 THC. *See id.* at 31.

Alyas also declares in support of his PI motion that, while ODP has not received any warnings, citations, or notices from the DOH regarding its products, the threat of enforcement has nonetheless forced him to curtail ordering inventory. *See id.* at 32. He says that approximately 80% of ODP's revenue comes from the affected hemp-derived products, so if it cannot sell these products, it will need to lay off approximately 15 employees, struggle to meet lease obligations, close retail locations, lose inventory value, and suffer loss of customer goodwill. *See id.* at 32–33.

Falces-Cachola is the founder and managing member of Elevated Enterprises. *See id.* at 34. According to his declaration in support of the PI Motion, Elevated Enterprises operates as a wholesale and distribution business in the hemp supply chain. *See id.* It distributes hemp products into Hawai‘i from Kansas, where products are sourced from licensed farms, warehouses, and shipped according to federal law. *See id.* at 34. The hemp-derived products meet the federal definition of hemp under 2018 Farm Bill. *See id.* at 35. Falces-Cachola further requires manufacturers to provide valid certificates of analysis for each product batch. *See id.*

Almost all of Elevated Enterprises' retail accounts have delayed or stopped placing orders with it since Act 269 took effect because of the risk of criminal liability and seizure of products. *See id.* at 36. Because of the enforcement risk, Elevated Enterprises has cancelled and reduced orders from its Kansas suppliers. *See id.* at 37. In addition to losing revenue, Elevated Enterprises will lose packaging and branding investments and distribution relationships. *See id.* Falces-Cachola has suspended plans to expand his business and the company's website was shut down due to the state laws. *See id.* at 39.

**B. Procedural History**

Plaintiffs (along with other individuals who are no longer plaintiffs here) filed a related case last year without legal counsel. *See Alyas, et al. v. Lopez, et al.*,

25cv00358-JAO-WRP, Dkt. 108 at 1–2. There, they alleged six counts: (1) Preemption by Federal Law; (2) Violation of the Dormant Commerce Clause; (3) Void for Vagueness – Criminal; (4) Void for Vagueness – Civil; (5) Violations of the Americans with Disability Act; and (6) Violation of HIPAA & Federal Privacy Protections. *See id.*, Dkt. 1. The primary issue with their former case was that the plaintiffs were unable to explain how the state's 2025 amendments to the hemp regulatory scheme affected the definition of hemp. *See id.*, Dkt. 108 at 4. Over the defendants' objections to dismiss *without* prejudice, the Court dismissed the initial case without prejudice with a warning that "future mishaps will be met with possible sanctions." *Id.* at 10.

One month later, Plaintiffs returned for another bite of the apple under a new case number.[3] ECF No. 1. After a round of motions practice, Plaintiffs amended their complaint as a matter of course on March 18, 2026, before the Court had ruled on the earlier motions. ECF No. 34. The operative FAC contains four counts: (1) Violation of the Supremacy Clause – Conflict and Obstacle Preemption against both Defendants; (2) Ultra Vires Administrative Action and Unlawful Rulemaking against Dr. Fink; (3) 42 U.S.C. § 1983 Dormant Commerce

[3] Although Plaintiffs were directed by the Court to file a notice of related case, *see Alyas*, 25cv00358-JAO-WRP, Dkt. 108 at 9, Plaintiffs failed to do so.

Clause against both Defendants; and (4) Violation of Due Process against both Defendants.

Soon after filing the FAC, Plaintiffs filed the PI Motion. ECF No. 37. Defendants, meanwhile, moved to dismiss, based on sovereign immunity and Fed. R. Civ. P. ("FRCP") 12(b)(6). ECF No. 43. The parties then each filed oppositions to the others' motions, ECF Nos. 49 (opposition to PI Motion), 52 (PI Motion reply), 50 (opposition to MTD), 55 (MTD reply). The Court held a hearing on both motions on July 2, 2026 ("Hearing").

## II. LEGAL STANDARD

### A. Motion to Dismiss

#### 1. FRCP 12(b)(1)

Under FRCP 12(b)(1), a party may move the court to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a [FRCP] 12(b)(1) or 12(b)(6) motion." *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017) (citations omitted). A jurisdictional attack pursuant to FRCP 12(b)(1) may be facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). A facial attack challenges the sufficiency of the allegations contained in a complaint to invoke federal

jurisdiction, while a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

**2. FRCP 12(b)(6)**

FRCP 12(b)(6) authorizes parties to move to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a FRCP 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted). Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice. *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions. *See id.* As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original).

**B. Preliminary Injunction**

FRCP 65(a) allows courts to issue preliminary injunctions. The purpose of a preliminary injunction is to "preserve the status quo and the rights of the parties until a final judgment issues in the cause." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).

To obtain preliminary injunctive relief, a plaintiff must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in favor of the plaintiff; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res.*

*Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "When, like here, the nonmovant is the government, the last two *Winter* factors 'merge.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The Ninth Circuit employs a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The issuance of a preliminary injunction may be appropriate when there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"; it is "never awarded as of right." *Winter*, 555 U.S. at 22, 24 (citations omitted). "[C]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,'" and should be particularly mindful, in exercising their sound discretion, of the "public consequences in employing the extraordinary remedy of injunction." *Id.* at 24 (citations omitted).

## III. DISCUSSION[4]

The Court dismisses each of Plaintiffs' claims but starts by examining Defendants' sovereign immunity argument.

### A. Eleventh Amendment

Defendants first challenge Plaintiffs' claims as barred by the Eleventh Amendment. *See* ECF No. 43-1 at 11. Plaintiffs maintain that Defendants are expressly authorized by statute to enforce the law, thereby satisfying the *Ex parte Young*'s standards that require a connection between the state official and the enforcement of the unconstitutional act. *See* ECF No. 50 at 10.

"The Eleventh Amendment shields unconsenting states from suits in federal court," *K.W. v. Armstrong*, 789 F.3d 962, 974 (9th Cir. 2015) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)), and bars individuals from bringing lawsuits against a state or an instrumentality of a state for monetary damages or other retrospective relief. *See Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016). It "applies regardless of the nature of relief sought and extends to state instrumentalities and agencies." *Krainski v. Nevada ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). Suits against

[4] Although the Court ultimately rules only on the MTD, there is significant overlap between the MTD and the PI Motion, and so cites to both.

state officials in their official capacities are likewise barred because they constitute suits against the state itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Eleventh Amendment immunity is not absolute, however. Congress may abrogate a state's immunity, or a state may waive immunity. *See Clark v. California*, 123 F.3d 1267, 1269 (9th Cir. 1997). In addition, under the *Ex parte Young* exception to Eleventh Amendment immunity, "private individuals may sue state officials in federal court for *prospective* relief from ongoing violations of federal law, as opposed to money damages, without running afoul of the doctrine of sovereign immunity." *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019) (citing *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011)). *Ex parte Young* is based on the proposition "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Office for Prot. & Advocacy*, 563 U.S. at 255.

To establish jurisdiction over Defendants under *Ex parte Young*, Plaintiffs must show "'some connection' between a named state officer and enforcement of a challenged state law." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (quoting *Los Angeles County Bar Ass'n v. Eu,* 979 F.2d 697, 704 (9th Cir. 1992)). This connection "demands merely that the implicated

state official have a relevant role that goes beyond 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'" *Mecinas v. Hobbs*, 30 F.4th 890, 903–04 (9th Cir. 2022) (quoting *Planned Parenthood*, 376 F.3d at 919).

Plaintiffs bring claims under *Ex parte Young* and § 1983. Defendants argue, however, that *Ex parte Young* does not apply because they only have a generalized duty to enforce state law or general supervisory power over the state laws at issue. *See* ECF No. 43-1 at 12 (citing *Woods-Bateman v. State of Hawaii*, 2008 WL 2051671, at *6 (D. Haw. May 13, 2008)). Plaintiffs maintain that Defendants' enforcement authority goes beyond a generalized duty because they are expressly named in the enforcement provisions. *See* ECF No. 50 at 11. Plaintiffs have the better argument.

HRS § 328G-11 provides that "[DOH] and the attorney general may inspect the operations, premises, and storage areas of any entity engaged in the distribution or sale of any product containing or derived from hemp[.]" HRS § 328G-12 similarly states that "[DOH], attorney general, department of law enforcement, and the police department of each county may seize and confiscate any product containing or derived from hemp[.]"

These statutory authorizations are specific and distinct from the generalized duties discussed in *Woods-Bateman*, which did not involve similar enforcement

clauses. *See* 2008 WL 2051671, at *6. A more analogous case is *Los Angeles County Bar Ass'n*, where the Ninth Circuit held that there was federal court jurisdiction over a lawsuit brought by a county bar association against state officials, challenging the constitutionality of a state statute regarding the number of trial judges assigned to the county. *See* 979 F.2d at 699–70. The Ninth Circuit found that the named state officials had "a specific connection to the challenged statute" because they had the power to appoint judges and certify them, meaning that the state law's limit on the number of judges "is currently being given effect by" the state official defendants. Here, too, the named defendants are the state officials giving effect to the state's hemp laws.

Defendants liken the clauses' permissive language to the type of "general oversight" that is not allowed. ECF No. 55 at 21. However, these clauses specifically authorize Defendants to *inspect*, *seize*, and *confiscate* hemp products, which unambiguously empowers them to enforce the challenged laws. Thus, the attorney general and head of the DOH are appropriate defendants in this suit and the MTD is denied as to sovereign immunity.

**B. Supremacy Clause (Count I)**

Plaintiffs argue that federal laws regulating hemp preempt the state's more restrictive laws under the Supremacy Clause. *See* ECF No. 37 at 13. Defendants respond that the Supremacy Clause does not allow for a private right of action and,

in any event, the federal hemp law explicitly provides that it *does not* preempt states from creating more stringent hemp laws. *See* ECF No. 49 at 20. Plaintiffs contend that any such provision only applies to the *production* of hemp and the state law's enforcement regime goes beyond that. *See* ECF No. 50 at 19–20. The Court concludes that the federal law does not preempt any of the State's laws at issue in this case.

**1. Private Cause of Action**

The Supremacy Clause gives Congress the power to preempt state law, *see Arizona v. United States*, 567 U.S. 387, 399 (2012) (citing Art. VI, cl. 2), but the clause itself does not create a private cause of action, *see Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325–26 (2015). Responding to Defendants' argument, Plaintiffs contend that 42 U.S.C. § 1983 provides the enforcement vehicle to protect their rights under the Supremacy Clause, *see* ECF No. 50 at 18, but the FAC does not mention § 1983 in Count I, so their reliance on it necessarily fails.

Nevertheless, the lack of a private right of action under the Supremacy Clause does not "diminish the significant role that courts play in assuring the supremacy of federal law." *Armstrong*, 575 U.S. at 326. Most notably, the *Ex parte Young* doctrine allows courts of equity to enjoin state laws as preempted when "an individual claims that federal law immunizes him from state regulation."

*Id.*; *see also Friends of the East Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 144 (2d Cir. 2016) ("In such circumstances, a plaintiff does not ask equity to create a remedy not authorized by the underlying law. Rather, [the plaintiff] generally invokes equity preemptively to assert a defense that would be available to it in a state or local enforcement action."). Here, Plaintiff's FAC states that they seek prospective relief against Defendants in their official capacities pursuant to *Ex parte Young*. *See* ECF No. 34 ¶ 65. The Court thus has equity jurisdiction to review the claim. *See Armstrong*, 575 U.S. at 327; *Friends of the East Hampton*, 841 F.3d at 144–45.

**2. Preemption**

Preemption comes in three forms. *See id.* First, a federal statute may contain an express preemption provision; second, states may be precluded from regulating conduct in a field where Congress has exclusive governance; and third, state laws may be preempted when they conflict with federal law. *See id.* Conflict preemption covers cases where "compliance with both federal and state regulations is a physical impossibility, . . . and those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]" *Id.* (citations and internal quotation marks omitted).

Courts should assume that "the historic police powers of the States" are not superseded "unless that was the clear and manifest purpose of Congress." *Id.* at

400 (citations omitted). This District Court has already determined that similar hemp laws were not preempted by the 2018 Farm Act. *See Duke's Invs. LLC v. Char*, 2022 WL 17128976, at *5–8 (D. Haw. Nov. 22, 2022). The Court sees no reason to depart from that conclusion here.

The 2018 Farm Act does not convey Congress's clear intent to preempt the state's power to regulate the sale and distribution of hemp. On the one hand, section 1639p(a)(3)(A) of the 2018 Farm Act states that "[n]othing in this subsection preempts or limits any law of a State or Indian tribe that (i) regulates the *production* of hemp; and (ii) is more stringent than this subchapter." On the other hand, the 2018 Farm Act further provides that "[n]o State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable." Pub. L. 115–334, title X, § 10114, Dec. 20, 2018, 132 Stat. 4914.

While there is "no federal pre-emption in vacuo, without a constitutional text or a federal statute to assert it[,] . . . [w]here a comprehensive federal scheme intentionally leaves a portion of the regulated field without controls, then the pre-emptive inference can be drawn—not from federal inaction alone, but from inaction joined with action." *Puerto Rico Dep't of Consumer Affs. v. Isla Petroleum Corp.*, 485 U.S. 495, 503 (1988). The 2018 Farm Act is somewhat

vague because it includes clauses that both expressly preempt state action and expressly authorize more stringent state action. Specifically, it preempts states from prohibiting interstate *transportation* through the state yet explicitly authorizes states to determine their own hemp *production* restrictions. It, however, is silent on the state's power to regulate *the sale and distribution* of hemp. If the law only included one or the other (for example, only expressly preempted interstate transportation regulations), then the Court may be inclined to interpret the statute's preemptive effect in favor of Plaintiffs. However, federal courts are directed to assume state laws are not superseded without clear intent, so the existence of both preemptive and non-preemptive clauses means that the silence about the sale and distribution of hemp weighs against superseding because it is unclear whether Congress intended the 2018 Farm Bill to have a preemptive effect on state laws regarding sale and distribution. *See Arizona*, 567 U.S. at 400.

Although Plaintiffs make a brief point that the state regulations frustrate the express preemption clause, *see* ECF No. 50 at 20, the argument is unavailing. The clause preempts states from prohibiting the transportation or shipment of federally compliant goods *through* the state, which does not preclude the state's ability to decide what goods may *remain* in the state. *See Duke's Invs. LLC*, 2022 WL 17128976, at *7–8.

Plaintiffs next argue that conflict and obstacle preemption apply here because the state laws regulating the sale and distribution of hemp impermissibly conflict with federal law. *See* ECF No. 37 at 13. They contend that, because federal law decriminalizes cannabis containing no more than 0.3% delta-9 THC, any state law that criminalizes product outside that percentage is preempted. *See id.* However, Plaintiffs do not clearly explain *how* the state's testing methodology affects the legality of their products. Besides general statements that their products may not be compliant with state law, they haven't alleged any facts that the testing methodology actually conflicts with the federal definition.

Regardless, the cases that Plaintiffs cite to support their position are not germane because preemption wasn't at issue. *See id.* (citing *United States v. Bautista*, 989 F.3d 698, 703–05 (9th Cir. 2021); *United States v. House*, 31 F.4th 745, 749–51 (9th Cir. 2022); *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 690 (9th Cir. 2022). *Bautista* and *House* exclude state convictions involving hemp from the Controlled Substances Act for purposes of federal sentencing. *See Bautista*, 989 F.3d at 703–05; *House*, 31 F.4th at 749–51. The federal court's treatment of a state conviction's impact on federal sentencing does not mean that the state law is preempted; without more, the state law is still effective under state law enforcement. And *AK Futures LLC* is irrelevant because it is a trademark infringement case that merely applies the federal definition of hemp to federal

trademark law. 35 F.4th at 690. Thus, Hawaii's more stringent laws regarding the sale and distribution of hemp are not superseded by federal law. *See Duke's Invs. LLC*, 2022 WL 17128976, at *6.

Furthermore, last year, Congress amended the federal definition of hemp, which changes the former definition of industrial hemp to mean "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with *a total* [*THC*] *concentration (including* [*THCA*]*)* of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o (emphasis added). Even if the Court found that the 2018 Farm Act had preclusive power over Hawaii's laws, the purported conflict between the federal and state law would likely be moot when the amendment takes effect in November 2026.

As a matter of law, the 2018 Farm Act does not preempt the state law regulating sales and distribution of hemp. Therefore, even assuming all alleged facts as true, Plaintiffs have failed to state a claim. *See Green Room LLC v. Wyoming*, 157 F.4th 1196, 1209 (10th Cir. 2025) (affirming district court's dismissal of preemption claim).

**3. Leave to Amend**

Defendants argue that Plaintiffs' claims should be dismissed with prejudice. *See* ECF No. 43-1 at 33. At the Hearing, Plaintiffs requested leave to amend if the Court was inclined to dismiss their claims.

Ordinarily, the Court will grant leave to amend "freely" under FRCP 15(a), but it "is not to be granted automatically." *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1387 (9th Cir. 1990). The Court will only deny leave to amend if "amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). Additionally, "[t]he district court may deny a motion for leave to amend if permitting an amendment would, among other things, cause an undue delay in the litigation or prejudice the opposing party." *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

Plaintiffs have not proffered any potential new facts that could change the Court's view of preemption as outlined above. Indeed, this whole action is Plaintiffs' second bite at the apple, *see Alyas*, 25cv00358-JAO-WRP, Dkt. 108 at 1–2, and Plaintiffs practically concede that by November of this year, the state's regulations will match the federal definition, *see* ECF No. 34 ¶ 22 n.1. Thus, amendment would be futile and leave to amend is DENIED for Plaintiffs' Supremacy Clause claim.

**C. Dormant Commerce Clause (Count III)**

Plaintiffs argue that the state laws disturb the Dormant Commerce Clause because they affect the distribution and retail sale of hemp products that move in interstate commerce. *See* ECF No. 37 at 18. Defendants contend that the state laws do not discriminate against out-of-state commerce. *See* ECF No. 43-1 at 27. The Court agrees with Defendants.

The United States Constitution empowers Congress "[t]o regulate Commerce . . . among the several States." U.S. Const. art I, § 8, cl. 3. The Dormant Commerce Clause is a judicially-created "negative implication" of the Commerce Clause, which is "driven by concern about 'economic protectionism, that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273–74 (1988)). "[I]t is the responsibility of the judiciary to determine whether action taken by state or local authorities unduly threatens the values the Commerce Clause was intended to serve." *Wardair Canada, Inc. v. Fla. Dep't of Revenue*, 477 U.S. 1, 7 (1986).

In assessing a potential violation of the Dormant Commerce Clause, courts ask "whether [the] challenged law discriminates against interstate commerce." *Davis*, 553 U.S. at 338 (citation omitted). "A discriminatory law is 'virtually *per*

*se* invalid,'" and can survive the challenge "only if it 'advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'" *Id.* (quoting *Oregon Waste Sys., Inc. v. Dep't of Env't Quality of Or.*, 511 U.S. 93, 99–101 (1994)). "[N]ondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Oregon Waste Sys., Inc.*, 511 U.S. at 99 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

Plaintiffs allege that the state's hemp regulations "impose unique and non-uniform requirements governing the legality, testing, and permissible forms of hemp products that differ materially from those applied in other states." ECF No. 34 ¶ 101. They also nonsensically argue that, because there are no producers of hemp products in Hawai'i, the state's regulations are discriminatory against out-of-state producers. *See* ECF No. 50 at 30. They do not contend that the regulations are facially discriminatory; instead, they assert that Hawaii's regulations "conditions market access on state-specific chemical classification methodologies[,]" which burdens the flow of interstate commerce that is not shared equally by in-state and out-of-state producers. *Id.* at 28. Plaintiffs further emphasize that this scheme excludes federally compliant out-of-state products from Hawaii entirely, *see Id.*, but this is just another repackaged preemption

argument. Defendants respond that the regulations apply uniformly to both in-state and out-of-state businesses, burdening both equally. *See* ECF No. 43-1 at 29.

The state's hemp regulations are not discriminatory. At best, the regulations "have only incidental effects on interstate commerce[,]" which make them valid unless "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Oregon Waste Sys., Inc.*, 511 U.S. at 99. Plaintiffs aver that the regulations fall exclusively on out-of-state hemp distributors "with no corresponding in-state producer subject to the same competitive disadvantage." ECF No. 50 at 30. But regulations are not discriminatory just because there are no hemp producers in Hawai'i. While the state's regulations ban certain hemp products, it is explicitly empowered to make such decisions under the Constitution. *See* U.S. Const. art I, § 8, cl. 3; *see also*, *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) ("absent discrimination, 'a State may exclude from its territory, or prohibit the sale therein of any articles which, in its judgment, fairly exercised, are prejudicial to' the interests of its citizens.") (quoting *Guy v. City of Baltimore*, 100 U.S. 434, 443 (1879)).

Although Plaintiffs urge the Court to find that Hawaii's hemp regulations present an excessive burden on interstate commerce, they have not alleged facts to support this. Hawaii's regulations protect the public's health and safety "where the propriety of local regulation has long been recognized." *Pike*, 397 U.S. at 142

(citation omitted). Unlike in *Pike*, where the application of the challenged law had "a far different impact, and quite a different purpose" from the state's putative intentions, Hawaii's regulations are straightforward and apply to the state's public health and safety concerns. *See id.* at 144. Plaintiffs have failed to state a claim based on the Dormant Commerce Clause. *See Nat'l Pork*, 598 U.S. at 364 (affirming decision to dismiss Dormant Commerce Clause claim for failure to state a claim).

As with their Supremacy Clause claim, Plaintiffs have not proffered any facts that may cure the deficiencies in their Dormant Commerce Clause claim. As such, amendment would be futile and the Court DENIES leave to amend this claim. *See Jackson*, 902 F.2d at 1387.

**D. Due Process (Count IV)**

Plaintiffs contend that Hawaii's hemp laws infringe on their due process rights because the statutory and regulatory scheme doesn't provide meaningful opportunity to be heard before seizure or destruction of their inventory. *See* ECF No. 34 ¶ 116; ECF No. 37 at 19. They further allege that the "inspection and seizure powers operate as the functional predicate for criminal enforcement[.]" ECF No. 34 ¶ 116. The Court therefore interprets Count IV as alleging two forms of due process violations: (1) violations related to potential inspection, seizure,

forfeiture, and destruction of inventory; and (2) violations related to potential prosecution.

Defendants argue that the claim isn't ripe and, in any event, Plaintiffs fail to state a claim. *See* ECF No. 43-1 at 15, 30. The Court concludes that: (1) the due process allegations premised on criminal enforcement fail to state a claim and (2) the due process allegations premised on inspection, seizure, forfeiture, and destruction of inventory are not ripe.

Turning first to the former, it's not entirely clear what the FAC alleges would be the due process violations in the event of criminal prosecution. If it's that the State cannot prosecute them for violating its hemp laws, the Court has already dispensed with their preemption argument. If it's that there are certain procedural rights that would not be followed in the event of a prosecution, the FAC fails to outline what those are. So, to the extent Plaintiffs rely on some possible threat of prosecution as a due process violation, they fail to state a claim.

As for the allegations that the State has deprived Plaintiffs of due process because its enforcement mechanisms don't contemplate an opportunity to be heard prior to seizure and destruction of inventory, Defendants contend that Plaintiffs' due process claim is not ripe because their purported injury is conjectural. *See* ECF No. 43-1 at 16. Plaintiffs assert that they need to establish only a credible

threat of enforcement for their claim to be ripe. *See* ECF No. 50 at 14 (citing *Tingley v. Ferguson*, 47 F.4th 1055, 1067–69 (9th Cir. 2022)).

For a claim to be justiciable, it must be ripe, which means it is "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Ripeness is "peculiarly a question of timing, . . . designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (internal citations omitted). The doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18 (1993). A case and controversy may be ripe when "the challenged regulations present[] plaintiffs with the immediate dilemma to choose between complying with newly imposed, disadvantageous restrictions and risking serious penalties for violation." *Id.* at 57. On the other hand, when the impact of the regulation cannot "be said to be felt immediately by those subject to it in conducting their day-to-day affairs," a claim against the regulation "would not be ripe before the regulation's application to the plaintiffs in some more acute fashion[.]" *Id.* at 58 (cleaned up).

The Ninth Circuit considers two factors to determine ripeness: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Tingley*, 47 F.4th at 1070, *abrogated on other grounds by Chiles v. Salazar*, 146 S. Ct. 1010 (2026) (citing *Thomas*, 220 F.3d at 1141).

The fitness prong is met when "the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Id.* (citation omitted). The Court considers whether the action "has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms." *Id.* (citation omitted). The hardship prong "requires looking at whether the challenged law 'requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance.'" *Id.* at 1070–71 (citation omitted).

Plaintiffs' due process claim does not satisfy the fitness and hardship factors. Although the question presented is primarily a legal issue because the Court is tasked with determining whether the statutory and regulatory scheme provides adequate procedures, Plaintiffs have not pled facts to establish a credible threat of their property being seized and destroyed. The Court sees an extra, speculative step between a threat of criminal enforcement and that Plaintiffs' property will be taken and destroyed without an opportunity to challenge such action. So while

Plaintiffs have established some threat of some enforcement, for Plaintiffs to meet the fitness prong on this claim, they must develop their facts further to show they face a credible threat of seizure and destruction that is not merely hypothetical. *See e.g.*, *Thomas*, 220 F.3d at 1141–42 (holding claim was not ripe when it "rest[ed] upon hypothetical situations" and was "devoid of any specific factual context"). The hardship prong is not met either. Although Plaintiffs alleged that they changed their business practices out of fear of general enforcement, *see* ECF No. 37 at 32–33, 39–40, this conclusory statement does not establish how the state law required Plaintiffs to significantly change their practice.

Thus, Plaintiffs' due process claim is not ripe. Because the claim is not ripe, the Court need not address whether Plaintiffs have stated a claim. *See Save Ardmore Coal. v. Lower Merion Twp.*, 419 F. Supp. 2d 663, 677 n.9 (E.D. Pa. 2005) ("As the resolution of the ripeness inquiry is dispositive, the Court need not address Defendants' additional grounds for dismissal based on failure to state a claim").

At the Hearing, Plaintiffs stated that they would be able to amend their complaint to describe their products and how they would violate state regulations. Plaintiffs' counsel also stated that his clients have ceased business operations indefinitely. If Plaintiffs are no longer selling hemp products, there is no risk that their products will be destroyed. Thus, Plaintiffs cannot meet the ripeness

requirements for this claim and amendment would be futile. *See Jackson*, 902 F.2d at 1387. The Court DENIES leave to amend this claim.

**E. Ultra Vires**

Plaintiffs argue that DOH was not authorized to redefine the legality of hemp through conversion formulas or categorical product restrictions. *See* ECF No. 37 at 17. Defendants contend that Plaintiffs fail to state a claim at all because the DOH had authority to promulgate the rules at issue. *See* ECF No. 43-1 at 25–26. This is a state law claim, over which the Court would only have supplemental jurisdiction. *See* 28 U.S.C. § 1367. Because the Court has dismissed all of Plaintiffs' federal law claims, the Court declines to exercise jurisdiction over Plaintiffs' Ultra Vires claim until Plaintiffs state a cognizable federal claim. *See* 28 U.S.C. § 1367(c)(3) ("[A] district court may decline to exercise supplemental jurisdiction over a [non-federal claim] if . . . the district court has dismissed all claims over which it has original jurisdiction.").

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss and DENIES Plaintiffs leave to amend.

Because Plaintiffs fail to state a claim, their Motion for Preliminary Injunction is DENIED as MOOT.

IT IS SO ORDERED.

The Court DIRECTS the Clerk to close the case.

DATED: Honolulu, Hawai‘i, September 4, 2026.

Jill A. Otake
United States District Judge

CIV. NO. 26-00035 JAO-WRP, *Alyas, et al. v. Lopez, et al.*; Order (1) Denying Plaintiffs' Motion for Preliminary Injunction (ECF No. 37), and (2) Granting Defendants' Motion to Dismiss (ECF No. 43)